IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| Harborview Marina, LLC | * | |
| Plaintiff | * | Civil Action No. L 02 CV 2799 |
| v. | * | |
| M/V KOKOMO, | * | |
| Defendant <u>in</u> <u>rem</u>. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**REPLY SUPPORTING HARBORVIEW'S MOTION TO
CONFIRM THE UNITED STATES MARSHAL'S SALE
OF THE M/V KOKOMO
AND RESPONSE
<u>OPPOSING MARK CLARK'S MOTION TO SET ASIDE THE SALE</u>**

The Fourth Circuit in <u>Golden v. OIL SCREW FRANK T. SHEARMAN</u>, 455 F.2d 133 (4th Cir.), <u>cert</u>. <u>denied</u>, 408 U.S. 924 (1972), affirmed the District Court's refusal to set aside a United States Marshal's sale of a vessel, where, **exactly as here**:

- The objectors challenging the sale, contended they were seamen;

- The sale was properly held and advertised, and there was no contention that it was not;

- There was only one bid - a credit bid;

- The ship had been sitting, arrested, for weeks prior to the sale;

- The objectors claimed the bid was inadequate;

- The objectors admittedly filed their objection after the Local Rules deadline for opposing a sale.

The Court of Appeals wrote:

> The initial neglect of appellants in failing to attend the sale or take other protective measures was compounded by their failure to file any motion within

>the [2 day after sale deadline] period [for filing objections to admiralty sales by the U.S. Marshal] required by [the Local Admiralty Rules]. The reason underlying the Rule is obvious. Vessels have value only when in use and when lying idle at the dock not only do they produce no income, but dockage fees and expenses for maintenance and protection continue to mount. Accordingly, it is desirable that a judicial sale of a vessel should stand confirmed and the vessel delivered to the purchaser as promptly as possible.  In the present case the [Vessel] had been under attachment and out of operation [for a period of about a month] and the application of [the Local Rules deadlines] to the sale was certainly appropriate.

Id. at 135.

Likewise, Judge Northrop also refused to set aside an admiralty United States Marshal's sale, in the face of allegations of "inadequacy" similar to Mr. Clark's here (with the exception, that the objectors, made the allegations timely), in Morgan Guaranty Trust Co. v. M/V Hellenic Sun, 581 F. Supp. 1266, 1267-69 (D. Md. 1984):

>Until a sale in admiralty is confirmed by a court order, it may be set aside, but extreme caution should be used in such matters. Ghezzi v. Foss Launch & Tug Co., 321 F.2d 421 (9th Cir. 1963); Wong Shing v. M/V Mardina Trader, 564 F.2d 1183 (5th Cir. 1977).  The rule is well settled that a judicial sale regularly made in the manner prescribed by law, upon due notice, and without fraud, unfairness, surprise or mistake will not generally be set aside. American Trading & Production Corporation v. Connor, 109 F.2d 871, 872 (4th Cir. 1940). Confirmation of the sale will not be refused because of mere inadequacy of price, however great, unless the inadequacy is so gross as to "shock the conscience and raise the presumption of fraud, unfairness or mistake." American Trading, id. at 872.
>
>It is also well settled that whether the price is grossly inadequate and whether confirmation should be refused are matters within the judgment and discretion of the tribunal ordering the sale. Id.  It is the view of this Court that no issue of fraud, collusion or mistake has been raised in the present case. I t was merely a matter, in this particular instance, of a potential bid which would be five hundred thousand dollars ($500,000) greater than the sale price. The [objectors] would wish this Court to say that raises a presumption of inadequacy of price to shock the conscience of this Court. And that, I might say, by the very testimony in which it was offered here today, indicates that it certainly is an empirical matter and one that would hardly be a substantial one such as the usual case involving the setting aside of a confirmation or lack of confirmation of a sale when some bidder walks in at the last moment and is willing to state a substantial price over that of the knocked-down price that has recently been acted upon by the

auctioneer. Such is not the case here, in any event.

In the Court's examination of the price, facial inadequacy is not necessarily determinative. For example, in <u>Golden v. Oil Screw Frank T. Shearman</u>, 455 F.2d 133 (4th Cir. 1972), <u>cert. denied</u>, 408 U.S. 924, 92 S. Ct. 2495, 33 L. Ed. 2d 335 (1972), the Fourth Circuit affirmed the confirmation of a $1,000 price, even though the tug's value was far in excess of that price. This low price was found not to be unfair in the light of all of the circumstances.

As in <u>Oil Screw</u>, this Court must take into account all of the surrounding circumstances. One consideration is whether a resale would produce a higher price. There is absolutely no assurance that such a resale as contemplated by the [objectors] here would produce any higher price. If it were allowed to go forward, as I just remarked heretofore, the sale put forward by these people under the circumstances is one that hardly can be said to be of such a caliber as those which would warrant a setting aside of a sale having taken place in this instance. Where there is no certainty that the resale will produce such a higher price, the Court is justified in confirming the sale. <u>Wong Shing v. M/V Mardina Trader</u>, 564 F.2d 1183 (5th Cir. 1977). In the instant case, [the plaintiff] contends there is no reason to expect that a resale would bring a higher price. This Court agrees that there is a lack of certainty concerning the potential price on resale. Thus, confirmation of the sale is most likely warranted.

[The objector] contends, however, that the price is grossly inadequate and should be set aside because this Court has a duty to see that the property brings "something like its true value." <u>Ballentyne v. Smith</u>, 205 U.S. 285, 289, 51 L. Ed. 803, 27 S. Ct. 527 (1907). It should be noted that in <u>Ballentyne</u>, upon which [the objector] relies, the property was worth seven times more than the bid. In contrast, the value of the property in this case is approximately twice the amount of the bid, if it was true that the value was $8 million, which is questionable. [The ship broker testifying as to value] testified here that his reckoning of the sum of 8 million was way off in this particular instance. Taking a look at what's occurring elsewhere in the shipping industry worldwide, the Court could not help but agree that it is doubtful under the circumstances that any bid over that which was the ultimate bid of $4 million in this instance would be forthcoming.

Various cases do exist where confirmation was refused because of gross disparity between the value of the vessel and the auction price. However, in the case where confirmation of the sale was refused, it was generally true that upset bids had been filed which substantially exceeded the sale price. There is no such instance here. Those cases may be best illustrated by <u>American Tramp Shipping v. Coal Export Corporation</u>, 276 F.2d 570 (4th Cir. 1960). However, even in the presence of higher upset bids, confirmation may be ordered. For example, in <u>Wong Shing</u>, the circuit court confirmed the district court's confirmation of the sale at auction to the highest bidder for $610,000 despite evidence of a potential upset bid of more than twice that much and a fair market value three times greater.

Here, no upset bid has been filed and no clear showing has been made that a

potential bid may be later obtained, and so this Court finds that under the circumstances the four-million-dollar price does not shock its conscience and is not grossly inadequate. Thus, the sale will be confirmed. To do otherwise would prejudice lienholders and the purchaser. Despite the testimony offered here of the small amount that would be necessary to keep this vessel in some sort of shape until another sale can be worked out, this Court feels, as has been argued by the bank, that any further delay of any further proceedings in this matter would probably bring a lower price than that which was obtained.

There was adequate publicity, quite a great deal of it, as has been testified to here; no one questions the adequacy of the broker in this instance and his honesty in working out this matter under the circumstances. While it has been stated that some time should elapse between the notice of the sale and the actual sale to permit people to come in and work something out, testimony to the contrary has been offered and that would seem to be the case in this particular instance, which would warrant, again, the conclusion of this Court that the sale was an adequate one because of the market and its rapid disintegration at this time. That it will be turned around at some future date might be so, but that is a hope whose time has yet to come. To set aside the sale in this instance would not seem practical, reasonable or just to those people who relied upon the sale, namely the creditors and the lienholders, as well as the purchaser.

The sale will be confirmed. To do otherwise would prejudice lienholders and the purchaser. Moreover, there should be a certainty to judicial sales so long as they are fair. Accordingly, the sale of the [vessel] for $4 million will be confirmed.

The issue now before the Court simply is this:

**<u>Should this Court now confirm the January 29, 2003 Marshal's sale - over Mr. Clark's untimely, and unsupported, objection?</u>**

It is not, whether Mr. Clark is a "seaman," or even if he is, whether he has a maritime lien against the M/V KOKOMO ("Vessel"), or, even if he does, the amount, and any priority, of that maritime lien.[1]

---

[1] As Harborview will point out, when the question of priority is at issue, Harborview will show that it has priority. The Court appointed Harborview as substitute custodian. Custodial fees, of wharfage alone, have run at $143 per day since Harborview arrested the Vessel on August 29, 2002, and they continue to run at that rate.

Many of these custodial fees, were what the Court awarded in its judgment for Harborview on January 17, 2003: a total of at least **$20,163** - and after January 17, 2003 to the present, custodial fees have continued to run, so that, now, a total of at least $28,171 of

(continued...)

Those questions go to priority of any distribution of the proceeds from the Vessel, and there are no proceeds until after the Marshal auctions the Vessel and this Court confirms the sale.

**This Court should now confirm the sale**. The parties' filings leave the following **completely without dispute**:

- Mr. Clark knew of his claims for months, knew of the arrest for months, was advised by several counsel for months, but never asserted his claim until immediately before the sale;

- Mr. Clark was completely aware of the Local Admiralty Rules - and the Vessel's arrest - for months, yet did not intervene or participate in the proceedings;

- Mr. Clark knew of the setting and timing of sale of the Vessel (in fact, Mr. Clark was present at the sale - and made no bid);

- Mr. Clark filed his objection to the sale, **3 days late**;

- Mr. Clark has not asked this Court to excuse this late filing, and at any rate, no applicable standards apply to excuse it;

- At any rate, Mr. Clark has not begun to support his contention that the Vessel could reasonably sell at auction for more than it did - there has been no such offer, ever, for the Vessel;

- There has been no "upset bid" and

- And, Mr. Clark has not made **any** deposit against the cost of keeping the Vessel, as the Local Admiralty Rules require, in order to successfully challenge the Marshal's sale.

Whether Mr. Clark is a "seaman" here (he is not) or has any maritime lien against the

---

[1](...continued)
Harborview's claims, are custodial fees. This $28,171 (increasing daily at $143) takes absolute priority over Mr. Clark's claims, even if he is a bona fide, non owner seaman and a range of factors apply. New York Dock Co. v. The Poznan, 274 U.S. 117 (1927); Transamerica Commercial Fin. Corp. v. F/V Smilelee, 944 F.2d 186, 953 (4th Cir. 1991).

The present issue, though, isn't priority - there has been no motion for distribution of proceeds, or determination of priority, whatsoever - Mr. Clark has only this week declared himself to be a "seaman" and announced his claim to be $30,000 (down from $36,000 in his verified complaint). The issue is not before the Court and in the meantime, costs continue to mount against the Vessel, which Harborview apparently has no reasonable chance to recoup.

Vessel (he does not) or whether his claims have priority (they do not), or any question of the sort, is a question for later in these proceedings.

Right now, Harborview is stuck with the Vessel, at its pier, occupying space, which it must insure (as Substitute Custodian); as Harborview has pointed out, and as this Court's Order and Judgment has confirmed, that the Vessel is incurring storage charges of $143 **per day** and that continues to run - with no **proven** reasonable chance of Harborview recouping these costs.

The reality is that no one has come forward to buy the Vessel for an amount appreciably greater than the amount, for which Harborview - following the process that this Court approved - bought the Vessel.

The United States Marshal properly sold the Vessel to Harborview, pursuant to this Court's Order for sale (Docket No. 12).  Mr. Clark has not properly, or at all, presented any reason to this Court, to overturn the sale.  This Court accordingly should now confirm the sale.


Dated: March 13, 2003.

                                        Respectfully Submitted,


                                        /s/ J. Stephen Simms
                                        J. Stephen Simms (#4269)
                                        W. Charles Bailey, Jr  (#23580)
                                        Simms Showers LLP
                                        Suite 702
                                        Twenty South Charles Street
                                        Baltimore, Maryland 21201
                                        Telephone (410) 783-5795
                                        Facsimile (410) 783-1368

                                        Counsel to  Harborview Marina, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2003 I caused a true and correct copy of the foregoing and draft order to be served by CM/ECF if opposing counsel has enrolled, or if not, by facsimile, as follows:

Alexander R,. McMullen, Esq.
McMullen & Drury, P.A.
300 Allegheny Avenue
Towson, Maryland 21204
By facsimile to 410-296-2460

/s/ J. Stephen Simms